**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **SIXING LIU,** | **Civil Action No. 17-7041 (SRC)** |
| **Petitioner,** | |
| **v.** | **OPINION** |
| **UNITED STATES OF AMERICA,** | |
| **Respondent.** | |

**CHESLER**, District Judge:

Presently before the Court is the motion to vacate, set aside, or correct sentence brought by Petitioner Sixing Liu pursuant to 28 U.S.C. § 2255.  (ECF No. 1).  Following this Court's Order to Answer (ECF No. 26), the Government filed a response to the motion (ECF No. 32), to which Petitioner replied.  (ECF No. 40).  For the reasons set forth in this Opinion, this Court will deny Petitioner's motion and deny him a certificate of appealability.

**I.  BACKGROUND**

In April 2012, Petitioner was charged by way of a superseding indictment with six counts of illegally exporting defense articles without a license in violation of the United States Arms Export Control Act (AECA), 22 U.S.C. § 2778(b)(1)(A)(I), and the International Traffic in Arms Regulations (ITAR), 22 C.F.R. § 120.17 (Counts One through Six of the indictment).  (Docket No. 11-208 at ECF No. 68 at 1-25).  Each of these charges arose out of Petitioner copying documents created by or for his employer and related to a defense article known as the SIM-DRG, which were illegal to export without a license under the AECA and ITAR, to electronic media, and taking them with him oversees to China on a personal laptop.  (*Id.*).  Petitioner was also charged with one count

of possessing stolen trade secrets in violation of 18 U.S.C. § 1832(a)(3), as he was found to be in possession of trade secrets owned by his former employer in the form of a binder containing documents including a March 18, 2009, white paper which described proprietary scientific, technical, and engineering information related to the SIM-DRG (Count Seven).   (*Id.* at 27). Petitioner was also charged with the interstate transportation of stolen goods in violation of 18 U.S.C. § 2314 for transporting these same documents, including the white paper, across state lines (Count Eight).   (*Id.* at 28-29).   Finally, Petitioner was also charged with three counts of making false statements to federal agents in violation of 18 U.S.C. § 1001(a)(2) for statements he made to law enforcement officials following his return to the United States (Counts Nine through Eleven). (*Id.* at 30-32).

Following a lengthy jury trial, Petitioner was found guilty on September 26, 2012, of all but two of the false statement charges.  (Docket No. 11-208 at ECF No. 121).  On March 26, 2013, this Court sentenced Petitioner to concurrent seventy month sentences on all counts other than the false statement charge of which he was convicted, for which he instead received a concurrent sixty month sentence.  (Docket No. 11-208 at ECF No. 137).  Petitioner filed an appeal on April 1, 2013. (Docket No. 11-208 at ECF No. 136).

In July 2013, Petitioner's trial counsel filed a motion to withdraw as counsel before the Third Circuit in which he stated that Petitioner wished to proceed on his appeal pro se.  (Third Circuit Docket No. 13-1940 at Document No. 003111332170).  In response to that motion, the Third Circuit required Petitioner to file a response indicating whether he truly wished to proceed pro se, wished to return to representation by counsel, or seek new counsel by August 27, 2013. (Third Circuit Docket No. 13-1940 at Document No. 003111355666).  Petitioner sought, and received, several extensions of this deadline, culminating with the Third Circuit ordering Petitioner

to file his response indicating his decision of how to proceed by January 11, 2014.  (Third Circuit Docket No. 13-1940 at Document No. 003111481143).  Petitioner, however, failed to file a timely response.  Instead, in May 2014, the Third Circuit ordered Petitioner to show cause why his appeal should not be subject to sanctions up to and including dismissal in light of his failure.  ((Third Circuit Docket No. 13-1940 at Document No. 003111609098).  Petitioner filed a response to that order in late May 2014, and chose to proceed pro se, resulting in him being subject to a filing deadline of July 10, 2014, for his initial brief.  ((Third Circuit Docket No. 13-1940 Docket Sheet).  Petitioner did not timely file, however, and instead sought a series of extensions.  (*Id.*).

In November 2014, Petitioner filed a motion seeking an order of this Court providing him access to the materials from his case including the various documents which gave rise to his criminal charges.  (Docket No. 11-208 at ECF No. 165).  Following briefing and the appointment of standby counsel for Petitioner, this Court entered an order on February 19, 2015, which permitted Petitioner to access the case materials at his prison through a secure laptop with the assistance of standby counsel.  (Docket No. 11-208 at ECF No. 177).  Following this order, the Third Circuit provided Petitioner extra time to file his initial appellate brief, which became due in early June 2015.  (Third Circuit Docket No. 13-1940 at Document No. 003111922109).  Petitioner did not timely file an appellate brief, and instead sought further extensions.  (Third Circuit Docket No. 13-1940 Docket Sheet).  On September 30, 2015, following yet another extension request from Petitioner, the Third Circuit issued an order directing Petitioner to show cause why his appeal should not be dismissed for failure to prosecute.  (Third Circuit Docket No. 13-1940 at Document No. 003112087217).  Petitioner filed a response in which he argued that various health issues and the difficulties of accessing his legal materials in prison both prior to and after the entry of the protective order were preventing him from perfecting his appeal.  (Third Circuit Docket No. 13-

1940 at Document No. 003112116794).  The Third Circuit rejected this argument, and ultimately dismissed Petitioner's appeal on December 31, 2015.  (Third Circuit Docket No. 13-1940 at Document No. 003112168060).  Petitioner filed a petition for certiorari, which the Supreme Court denied.  (Third Circuit Docket No. 13-1940 Docket Sheet).  Petitioner filed a petition for a rehearing, and the Supreme Court denied it in December 2016.  (*Id.*).

Petitioner thereafter filed his § 2255 motion in this matter in September 2017.  (ECF No. 1).  In his motion, Petitioner raised twenty four claims challenging either counsel's actions at trial or this Court's ruling, and one claim in which he asserted that he intended to raise further claims not then specified.  (*Id.*).  Petitioner thereafter spent several years filing repeated motions seeking extensions of time and further access to legal materials, none of which specified any direct claims for relief Petitioner was seeking to raise.  (*See, e.g.,* ECF No. 26 at 1-2).  In August 2019, this Court entered an order directing Petitioner, to the extent he wished to raise further claims, to file an all-inclusive § 2255 motion by September 6, 2019.  (*Id.*).  This Court also ordered that no further extensions would be permitted.  (*Id.*).  Petitioner, however, did not comply and instead filed yet another extension request.  (*Id.*).  On February 25, 2020, this Court entered an order denying Petitioner's final extension request, denying Petitioner's request to amend or file new claims (including whatever unspecified claims were intended to be raised through claim 25 of his original motion to vacate sentence), and ordered the Government to file a response to the original motion.  (*Id.* at 2-4).  The Government thereafter filed a response (ECF No. 32), to which Petitioner eventually replied.  (ECF No. 40).

## II.  DISCUSSION

### A.  Legal Standard

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence.  Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.  Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure."  *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States*, 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

### B.  An evidentiary hearing is not required in this matter

28 U.S.C. § 2255(b) requires an evidentiary hearing for all motions brought pursuant to the statute "unless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b); *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).  "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the

petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Government of Virgin Islands v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.  For the reasons set forth below, Petitioner's claims are clearly without merit and no hearing is warranted in this matter.

### C.  Petitioner's Ineffective Assistance of Counsel Claims

In the majority of his claims, Petitioner asserts that his trial counsel was constitutionally ineffective.  The standard which applies to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984).  To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient.  This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687*; see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007).  To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005).  A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.*  The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.*  In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge*, 119 F. Supp. 3d at 280-81.

In his first claim for relief, Petitioner contends that counsel proved ineffective in failing to challenge the definition of "export" used for the ITAR related counts of his indictment in the jury charge because he believes that an "export" under ITAR requires that an item be disclosed or transferred to a foreign person to amount to a violation. Contrary to the assertions in Petitioner's motion, counsel did object to the way in which export was defined in the jury instructions, requesting that it not be summarized by explained in the exact language of the applicable statute and regulations. (*See* Document 3 attached to ECF No. 32 at 12-13). Putting that aside, however, Petitioner's argument also assumes that there is only one applicable definition to export under the statute – passing on items or information to a foreign person. In fact, "export" is defined to also include the entirely separate sort of conduct which Petitioner committed in this matter and which this Court used in its jury instructions – the "sending or taking of a defense article" – which

includes the sort of technical data involved in this case – "out of the United States in any manner." 22 C.F.R. § 120.17. This Court's jury instruction tracked that language, and explained it clearly to the jury – including by clarifying that Petitioner was still required to have taken an actual device – such as a document or computer file – outside of the United States and was not guilty merely by leaving the country with the knowledge contained in his head. (*See* Docket No. 11-208 at ECF No. 124 at 58-59). As the language used in the court's charge mirrored the language of the defining regulations, any objection to that definition would have been meritless. As counsel cannot be ineffective in failing to make a meritless objection, *see Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *see also United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011), Petitioner's first claim fails to show that counsel was ineffective, and is without merit.

In his second claim, Petitioner contends that counsel inadequately opposed the Court's jury instructions as to intent, arguing that counsel should have contended that the specific intent requirement applicable to his AECA/ITAR violations required sufficient proof of willfulness, which Petitioner believes should require proof that he knew he was committing a criminal act. Under applicable Third Circuit caselaw, to prove a violation of the statute, the Government must prove that the defendant acted "willfully." *United States v. Electro-Glass Prods.*, 298 F. App'x 157, 160 (3d Cir. 2008); *see also United States v. Tsai*, 954 F.2d 155, 160 n. 3 (3d Cir. 1992). Willfulness is shown where "the defendant knew that the export was in violation of the law." *Tsai*, 954 F.2d at 162. This Court, tracking the relevant model charge, conveyed this exact requirement to the jury – informing them that to prove willfulness, the Government need prove that Petitioner "knew his conduct was unlawful and that he intended to do something the law forbids." (Docket

No. 11-208 at ECF No. 124 at 60-61).  This Court's intent instruction thus accurately conveyed the law, and Petitioner's contention that the charge was insufficient is meritless.[1]

In his third ineffective assistance of counsel claim, Petitioner contends that counsel proved ineffective in failing to challenge the State Department's certification that certain documents involved in his case were subject to ITAR restrictions as improper ex post facto determinations. Because the Ex Post Facto clause prohibits the punishing of an individual for activity which was not criminal when it occurred, a conviction under AECA and the ITAR regulations will only stand where the defendant's actions violated the statute or regulations at the time of his conduct – i.e., the items exported were on the United States Munitions List and therefore subject to ITAR at the time of the export.  *See, e.g., United States v. Zhen Zhou Wu*, 711 F.3d 1, 18-20 (1st Cir. 2013). Thus, a certification of restricted status made for the first time *after* the export in question will not suffice to render an export criminal.  *Id.* at 20.

Petitioner's contentions of an ex post facto violation here, however, are based on a false understanding of the facts produced at his trial – while the State Department certification Petitioner contends created the issue submitted at trial was prepared after Petitioner's violations, it merely confirmed that the documents in question were subject to the ITAR and was not an initial determination of whether those documents were covered.  According to the testimony presented at trial, the technology at the heart of Petitioner's violations – and in turn the documents related to

---

[1] The Court further notes that counsel *did* strenuously object to portions of the jury charge as to intent, contending that the Court should omit certain language – generally allowed in this Circuit – to the effect that the defendant was not required to know of the statute rendering his conduct criminal, an objection which this Court granted in part, limiting the willfulness instruction in this case to the model charge rather than including additional items the Government was not required to prove.  (*See* Document 3 attached to ECF No. 32 at 16-20).  Thus, counsel essentially made a version of the argument Petitioner contends he should have, and he was not ineffective in failing to object to the Court's intent instruction.

that technology giving rise to criminal liability in this case – were determined to be subject to ITAR regulations as early as 2007.  (*See* Document 2 attached to ECF No. 32 at 1112-1119). Indeed, testimony provided at trial further confirmed that the documents Petitioner was criminally charged for exporting each bore markings indicating that they were subject to ITAR restrictions before Petitioner committed the actions in question.  (*Id.* at 976-81).  As the documents had been determined to be subject to ITAR prior to Petitioner's exporting them, and as that fact was clearly evinced by the ITAR labeling on each document, it is clear that an ex post facto challenge would have been without merit, and counsel was therefore not ineffective in failing to raise such a challenge.  *Werts*, 228 F.3d at 203.

In his fourth claim, Petitioner contends that counsel proved ineffective in failing to object when this Court voir dired potential jurors as to whether they would be available for trial during the Jewish holidays which fell during the expected trial dates in this matter, which Petitioner contends amounts to an improper removal of jurors on religious grounds.  Petitioner is mistaken. This Court did not exclude any jurors *because* they were Jewish, indeed, the Court did not exclude *any jurors at all*.  Instead, the Court, recognizing that many observant Jews would not be available for trial for two separate dates during Petitioner's trial, asked jurors about availability to facilitate jurors who would not be available being excused.  As the Court's questions did not systematically exclude jurors from serving in this matter as any Jews who would be available during the holidays – defense counsel included – were not impacted by the Court's questions, the holiday related voir dire did not deny Petitioner his rights under the Sixth Amendment or relevant statutes.  *See United States v. Myrick*, No. 97-197, 1998 WL 832647, at *8 (N.D. Ill. Nov. 17, 1998); *see also Grech v. Wainwright*, 492 F.2d 747, 749-50 (5th Cir. 1974).  Any challenge to the questions on that basis

would have been without merit, and Petitioner has therefore failed to show that counsel was ineffective in this claim. *Werts*, 228 F.3d at 203.

In his next two claims, Petitioner argues that counsel proved ineffective in failing to "adequately argue" that the document involved in the count of his indictment related to the theft of trade secrets was neither a trade secret nor a product produced for or placed in interstate commerce sufficient to trigger criminal liability, and that the documents involved in his charges were not "goods" sufficient to trigger liability.[2]  Turning first to whether the document was a trade secret or product placed in interstate commerce, Petitioner is entirely mistaken – during his closing argument, trial counsel raised those arguments specifically, and essentially made the argument Petitioner now raises, albeit in a more truncated fashion than Petitioner may have liked. (Document 2 attached to ECF No. 32 at 1843-44).  Counsel cannot prove ineffective in "failing" to raise an argument he in fact made, and nothing Petitioner has submitted would have altered the outcome of trial had counsel expanded on this argument to Petitioner's content.

Petitioner's "goods" argument fares no better.  Petitioner essentially contends that counsel should have argued that the white paper involved in this matter did not constitute a "good" sufficient to trigger criminal liability for the interstate transportation of stolen goods because the information in it is purely intangible intellectual property.  That documents containing information

---

[2] While the Court in this matter addresses Petitioner's claims related to the non-ITAR counts on the merits, it need not do so.  Under the concurrent sentence doctrine, where a habeas petitioner received concurrent sentences on multiple counts of his conviction, a district court has the discretion to decline to address claims related to one concurrent count where it is clear that another count will survive review and no additional collateral consequences arise solely from the count the Court declines to address. *See, e.g., Logan v. Dist. Att'y Allegheny Cnty.*, 752 F. App'x 199, 121-22 (3d Cir. 2018).  Here, Petitioner received concurrent 70 month sentences on each of the counts of his conviction other than the count related to lying to federal officers for which he received a concurrent 60 month sentence.  Thus, so long as at least one of the 70 month terms would survive review, this Court would be free to decline to address claims as to the remainder of Petitioner's charges.

concerning the production or manufacture of complex items are "goods" sufficient to trigger criminal liability is, however, not a novel concept. *See, e.g., United States v. Bottone*, 365 F.3d 389, 393 (2d Cir. 1966) (finding that documents "describing manufacturing procedures are goods," citing *United States v. Lester*, 282 F.2d 750 (3d Cir. 1960), *cert. denied*, 364 U.S. 937 (1961); *United States v. Seagraves*, 265 F.2d 876 (3d Cir. 1959)); *see also United States v. Lyons*, 992 F.2d 1029, 1032-33 (10th Cir. 1993) (finding that while purely intellectual property may not qualify as a "good" under the statute, such intellectual property – such as software – will amount to a "good" warranting criminal liability where it is accompanied by the theft of tangible property containing that intellectual property).   Had counsel raised the argument Petitioner now contends he should have, that motion would not have succeeded, and it is therefore clear that Petitioner did not suffer prejudice as a result of counsel's "failure" to raise the "goods" related argument in this matter.  Petitioner's goods related ineffective assistance claim is therefore without merit.

In his next claim, Petitioner asserts that his trial counsel did not adequately prepare or investigate the lying to federal officers count of which he was convicted, and that, had counsel been more familiar with the facts of Petitioner's case, he would not have been convicted of that count.  Petitioner also claims that counsel failed to adequately impeach or cross-examine the officer to whom the false statements were made.  In order to make out his claim that counsel was not adequately prepared, Petitioner would have to make a comprehensive showing of what information would have been produced through more thorough investigation and preparation, and that this information would have changed the outcome of the criminal matter.  *Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).  Petitioner fails to make any such showing.  Instead, Petitioner, through his own bald assertions and attempts to split hairs, suggests that his statements to law enforcement were not *technically* false.

Regardless, it is clear from the record of Petitioner's trial and his cross examination of Lawrence Martino, the agent to whom the false statement in question was made, that counsel was very familiar with the facts undergirding the three false statement charges and was amply prepared to challenge Martino's version of events – indeed, he convinced the jury to acquit Petitioner on two of those charges.  Had counsel presented Petitioner's hair-splitting characterizations of his statements to Martino, it is by no means likely that the outcome of trial would have been any different.  Counsel thoroughly challenged the false statement counts, including through his cross-examination of Martino, and was clearly well prepared to challenge the false statement counts.  As it is clear that counsel was not constitutionally deficient in preparing to challenge the three false statement counts, and was able to convince the jury to acquit on two of those counts, Petitioner's contention that counsel was insufficiently prepared as to the false statement counts at trial is clearly without merit and provides no basis for relief.

In his next claim, Petitioner contends hat counsel failed to seek an "evidentiary hearing" to impeach the testimony of Roland Smith.  Petitioner offers no basis for the holding of a separate evidentiary hearing as to Mr. Smith, and this Court is aware of no basis for such a hearing from the record of this matter.  Even construing Petitioner merely to be asserting, as he states in his memo that counsel should have "more vigorously" (Document 1 attached to ECF No. 1 at 69) cross-examined Smith, Petitioner fails to show that counsel was in any way actually deficient in cross-examining Smith.  Indeed, Petitioner's arguments in his briefing to the effect that Smith repeatedly lied during cross-examination are themselves based on the series of questions counsel did pose, all of which aimed to show that Smith's testimony was contradictory, biased, and untrustworthy.  Counsel's cross-examination of Smith in this matter was thorough and challenged Smith on each of the inconsistencies and biases Petitioner now raises – Smith's presence at various

trainings, inconsistencies on the location of various offices in the building in which he worked with Petitioner, the subject of Smith's conversations with Petitioner, and Smith's apparent bias towards Petitioner.  (*See* Document 2 attached to ECF No. 32 at 719-27).  As counsel did vigorously cross-examine Smith, as counsel addressed and raised during that examination the issues Petitioner asserts he should have, and as Petitioner has not shown that counsel's cross-examination of Smith in any way prejudiced him, Petitioner has failed to show that counsel was constitutionally ineffective in his cross-examination and impeaching of Smith.

In his next series of claims, Petitioner contends that counsel erred in failing to object to certain aspects of the Court's jury instructions.  First, Petitioner argues that counsel should have objected to the Court instructing the jury that "and" should be treated as "or" in certain circumstances.  Counsel in fact *did* object to the instruction to the extent that the Court should clarify that and was not to be so treated in certain circumstances – such as the Court's instruction that the jury had to find both knowledge and willfulness on the ITAR counts, an objection this Court granted.  This Court's instruction as to treating "and" as "or" was otherwise entirely proper, *see, e.g., United States v. Bonanno*, 852 F.2d 434, 441 (9th Cir. 1988), and counsel was not ineffective in failing to object more strenuously or to more usages of "and" as "or" than he did. *Werts*, 228 F.3d at 203.  Petitioner likewise contends that counsel should have objected to the Court's charge that the jury could consider a future benefit in order to find that his actions were intended to benefit Petitioner on the trade secrets count of the indictment.  Counsel did object to this portion of the charge, resulting in the omission of certain suggestions as to what a future benefit may entail.  (*See* Document 3 attached to ECF No. 32 at 29-30).  As counsel did object, and as the

instruction ultimately given – that the benefit to be obtained could include a future benefit – was proper,[3] Petitioner was not prejudiced by any failure to make a more thorough objection.

Petitioner also argues that counsel should have objected to the Court's instruction as to the ITAR counts because he believes the jury could have concluded that they didn't need to find that Petitioner committed all four elements of the charged counts to find him guilty.  Even if it may have been *slightly* clearer had the Court instructed the jury that the Government had to prove "each" or "all" of the four elements rather than simply stating that the Government must prove the four elements, Petitioner was clearly not prejudiced as it is abundantly clear from the jury instruction in context that the Government had to prove all of the elements set forth for the ITAR counts.  As it is clear that the jury's verdict would not have been different had counsel made this objection, Petitioner was not prejudiced by the alleged failing and counsel was not ineffective in not raising this objection.

Petitioner additionally argues that counsel should have objected to this Court's instruction that the jury's verdict "must be unanimous, whether it be guilty or not guilty."  (Document 2 attached to ECF No. 32 at 1951-52).  This statement, however, is an entirely accurate statement of the law – a verdict must be unanimous to convict, or to acquit, and anything less would result in a hung jury and potential retrial.  *See United States v. Smukler*, 991 F.3d 472, 492-93 (3d Cir. 2021) (finding no error in a jury charge that required a unanimous verdict for either a guilty or not guilty

---

[3] The statute requires that the defendant intend to convert the trade secret to "the economic benefit" of someone other than the owner, including the defendant himself.  *United States v. Hsu*, 155 F.3d 189, 195-96 (3d Cir. 1998).  It does not require that this benefit be a pure quid pro quo.  Obviously, in any case other than a clear quid pro quo, this benefit logically will amount to some sort of future benefit, such as the future employment or enrichment of a future employer discussed at the charge conference in this matter.

finding).  Any objection to this instruction would have been meritless, and Petitioner was not prejudiced by the failure to make such an objection.  *Werts*, 228 F.3d at 203.

Petitioner also argues that counsel proved ineffective in failing to challenge the Court's instruction that the jury should consider the total value of stolen items in determining whether the $5,000 threshold was met for criminal liability for count eight of his criminal indictment, and should have argued that threshold had to be met solely by the documents alleged in count eight itself.  Even assuming, *arguendo*, that Petitioner is correct that the universe of documents to be considered on that count should have been limited, Petitioner clearly suffered no prejudice – testimony evinced at trial indicates that the development costs for the white paper which was clearly included in the documents referenced in the relevant count of the indictment contained information which had cost several million dollars to develop, and that the information could save a competitor years and millions of dollars in development costs if they obtained it.  (*See* Document 2 attached to ECF No. 32 at 1163-66).  Thus, there was more than ample evidence to support the conclusion that the documents were worth in excess of $5,000.  Nothing Petitioner has submitted persuades this Court that the outcome of trial would have been any different had counsel suggested and obtained a more limited instruction as to the $5,000 threshold, and Petitioner has thus failed to show he was prejudiced by counsel's failure to object, and Petitioner has failed to show counsel was ineffective on that basis.

In his last jury instruction claim, Petitioner contends that counsel proved ineffective in not objecting to the Court's instruction that the jury should consider only the provided English translations and not rely on any innate knowledge of Mandarin in evaluating certain documents so that all jurors considered the same evidence.  Petitioner, however, has not shown that any of the proffered translations were inaccurate, and has certainly not shown that they were in any way

actually prejudicial.  In the absence of clear, identified, prejudicial translation errors, Petitioner cannot show that counsel was ineffective in declining to oppose the requirement that all jurors consider the provided translations rather than any independent knowledge.  *See, e.g., United States v. Montilla*, 85 F. App'x 227, 230 (2d Cir. 2003).  Petitioner's translation related claim thus fails to set forth a basis for habeas relief.

In his final ineffective assistance claim, Petitioner argues that counsel's alleged errors, even if not sufficient individually to warrant relief, may amount to a constitutional error if reviewed cumulatively.  Although "errors that individually do not warrant habeas relief may do so when combined," claims of cumulative error will only warrant relief where the Petitioner can show that he was actually prejudiced by the alleged cumulative failings.  *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007); *see also Fahy v. Horn*, 516 F.3d 169, 205 (3d Cir. 2008).  Where the claims the petitioner is presenting cumulatively are ineffective assistance claims, this essentially requires the Petitioner to prove that he suffered *Strickland* prejudice from counsel's actions when they are considered in total.  *Albrecht*, 485 F.3d at 139; *Judge*, 119 F. Supp. 3d at 292-93.  Having considered all of Petitioner's claims, and having found that Petitioner has failed to show he was prejudiced by counsel's performance in any of his claims individually, this Court concludes that Petitioner has in turn failed to show that counsel's acts cumulatively prejudiced his trial.  Whether considered individually or cumulatively, Petitioner has utterly failed to establish ineffective assistance of counsel in this matter.

## D.  Petitioner's defaulted direct error claims

In addition to his claims of ineffective assistance of counsel, Petitioner also contends that this Court erred in various decisions made prior to, during, and after his trial.  Each of these direct

error claims could have been, but were not raised on direct appeal due to Petitioner's failure to timely and properly prosecute his appeal.  As such, all of Petitioner's direct error claims are procedurally defaulted.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *see also United States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir. 1993); *Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014).  As a § 2255 motion may "not be allowed to do service for an appeal," *Bousley v. United States*, 523 U.S. 614, 621 (1998), a § 2255 petitioner may not proceed with a procedurally defaulted claim unless he can show cause for the default and actual prejudice or that he is actually innocent of the offense in question.  *Massaro*, 538 U.S. at 504; *Frady*, 456 U.S. at 167-68; *Parkin*, 565 F. App'x at 151.

In this matter, Petitioner's stated argument for cause and prejudice arises from his belief that he was not provided full and unlimited access to his trial materials, and that the limitations placed upon his access to those materials hampered his ability to pursue his direct appeal.  This argument, however, is utterly unavailing.  Although the protective order entered in Petitioner's criminal case did place restrictions on his ability to access his case materials – which included various documents whose restricted status gave rise to Petitioner's criminal charges – those restrictions were not so onerous that they prevented Petitioner from actually filing an appeal.  It was Petitioner who chose to proceed *pro se* on appeal, it was Petitioner who failed to make adequate attempts to access his case materials pursuant to this Court's protective order, and it was Petitioner who, much as he did in this matter, repeatedly delayed in filing his appellate brief, ultimately resulting in his appeal being dismissed.  Indeed, more than two years passed between the filing of Petitioner's appeal and the dismissal of his appeal for lack of timely prosecution, (*see* Third Circuit Docket No. 13-1940 Docket Sheet), and Petitioner could have accessed any and all of his case materials pursuant to this Court's protective order for approximately nine months before

his appeal was dismissed.  Petitioner had ample time to access his materials and prepare his appeal, and failed to do so.  He has therefore not shown cause sufficient to excuse his procedural default.

Because Petitioner has failed to show cause to excuse his default, he could only proceed on his claims by showing he is "actually innocent" of the crimes of which he was convicted.  A petitioner can only make out a claim of actual innocence sufficient to overcome his procedural default by showing "that it is more likely than not that no reasonable juror would have convicted him" in light of the evidence he presents.  *McQuiggan v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This requires he present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* at 401.  Here, Petitioner has not presented any evidence which would suggest he was factually innocent of the charges for which he was convicted, and he has certainly not shown that a jury would not have convicted him had they been faced with his § 2255 motion.  Likewise, to the extent that Petitioner argues that his actions have been decriminalized to any extent because the definition of "export" under the ITAR has been amended since his conviction he is entirely mistaken – it remains the case, as it was at trial, that the taking or sending of a restricted document out of the United States, such as by taking electronics containing restricted documents out of the country, amounts to an illegal exportation under the statute.  *See* 22 C.F.R. § 120.17(a)(1); *see also* 22 C.F.R. § 120.6 (items restricted from exportation include "technical data").  Petitioner's actions were not decriminalized, and he has not otherwise shown that he is actually innocent of the offenses of which he was convicted.  Petitioner thus remains procedurally barred from raising claims of direct error which could have been raised on direct appeal, which include the arguments raised in grounds

seventeen through twenty four of Petitioner's motion, and this Court therefore need not and will not address those barred claims on the merits.

## III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c) the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a [§ 2255 motion] on procedural grounds without reaching the prisoner's underlying constitutional claim, a [Certificate of Appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons expressed above, Petitioner's ineffective assistance claims are all clearly without merit, and Petitioner's remaining direct error claims are procedurally barred, and Petitioner has therefore failed to make a substantial showing of the denial of a constitutional right. A certificate of appealability is therefore denied.

**IV.  CONCLUSION**

For the reasons set forth above, Petitioner's motion to vacate his sentence (ECF No. 1) is

**DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.


<u>s/Stanley R. Chesler, U. S. D. J.</u>
Hon. Stanley R. Chesler,
United States District Judge